FILED

FEB 1 5 2022

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

1:22MC0133 RP

| | |
|---|---|
| IN RE: SUBPOENA TO MEDIATEK USA INC. | Case No: _____ |
| IN CONNECTION WITH: | |
| COMMWORKS SOLUTIONS, LLC, | |
| Plaintiff, | |
| v. | Case No.: 1:20-cv-7534-MKV |
| RCN TELECOM SERVICES, LLC, | Pending in: The United States District Court for the Southern District of New York |
| Defendant. | |

**MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA AGAINST**
**MEDIATEK USA INC. OR, ALTERNATIVELY, TO TRANSFER ENFORCEMENT**

## I.    INTRODUCTION

Pursuant to Rule 45(d), Plaintiff CommWorks Solutions, LLC ("CommWorks") moves

for an order compelling compliance with the subpoena against non-party MediaTek USA Inc.

("MediaTek-USA"), a subsidiary of MediaTek Inc. ("MediaTek-Taiwan"),[1] in the underlying

action, Case No. 1:20-cv-7534-MKV, pending in the United States District Court for the

Southern District of New York ("Issuing Court").

CommWorks served MediaTek-USA with a third-party subpoena requesting various

information including source code relating to MediaTek's chips used in Wi-Fi routers that

Defendant RCN Telecom Services, LLC ("RCN" or "Defendant") provides to its customers.

After CommWorks significantly narrowed the requests to only four MediaTek chips, MediaTek-

USA only produced datasheets for each of these chips.  During the meet-and-confer process,

MediaTek-USA claimed that it cannot make the source code available for review because it is in

in the possession of MediaTek-Taiwan, an entity that was not served with the subpoena.

MediaTek's position not only contradicts the facts, but has also been rejected by other tribunals

that found that MediaTek-USA has control over MediaTek-Taiwan's documents and source

code.

Accordingly, CommWorks seeks an order compelling MediaTek-USA to produce

additional documents and source code responsive to CommWorks' subpoena.  Alternatively,

CommWorks moves pursuant to Rule 45(f) to transfer this motion to the Issuing Court.

## II.    FACTUAL BACKGROUND

In the underlying action, CommWorks accuses Internet service provider RCN of

---

[1] "MediaTek" refers to MediaTek-USA and MediaTek-Taiwan, where the distinction is not relevant.

infringing several patents covering features implemented on Wi-Fi routers and/or access points that RCN provides to its customers. *See* Decl. of Brandon G. Moore ("Moore Decl."), Ex. 1. Some of RCN's Wi-Fi routers incorporate chips and/or systems-on-a-chip ("SoCs" or "chips") by third-party MediaTek that at least partially implement features accused of infringement in the underlying action. Discovery into MediaTek's chips—specifically various documents describing their functionality and the source code used to design the chips and the source code of programs running on those chips when the Wi-Fi routers are operational—is the subject of this motion.

In the underlying action, CommWorks learned through discovery and corroborated by independent research that RCN provided certain Wi-Fi routers to its subscribers as part of RCN's Internet service offerings, including the Belkin EA2750 and Arris DG3450 routers (the "Relevant Routers"). RCN's production related to the Relevant Routers was limited to high-level datasheets and did not include any information regarding the accused features. Through third-party discovery from router manufacturers Belkin and Arris, and corroborated by independent research, CommWorks determined that the Relevant Routers include MediaTek chips that implement at least some of the accused functionality. CommWorks then issued a Rule 45 subpoena to MediaTek (the "Subpoena") and MediaTek objected to the subpoena without furnishing any responsive information. *See* Moore Decl., Exs. 2 and 3. After receiving MediaTek's objections, CommWorks undertook to reduce the burden on MediaTek by narrowing the scope of the requests and informed MediaTek of its efforts. *See* Moore Decl., Ex. 4. Actively working with third-party Wi-Fi router manufacturers, including Belkin and Arris, and performing independent technical research, CommWorks was able to determine that only four of MediaTek's relevant SoC models are included in the Relevant Routers: MT7615EN, MT7615B, MT7620A, and RT5592 (the "Relevant Chips"). Consistent with its objective of

2

reducing the burden on MediaTek, CommWorks narrowed its requests for technical documents and source code relating only to the four Relevant Chips. *See* Moore Decl., Ex. 5. After receiving no response to its email, CommWorks requested a meet and confer with MediaTek to discuss the narrowed requests.

At the meet and confer, using CommWorks' notice letter to MediaTek as a pretext, MediaTek demanded a covenant not to sue from CommWorks as a condition for complying with the Subpoena. *See* Moore Decl., ¶ 23. MediaTek further informed CommWorks that it would take the position that MediaTek-USA—the entity that was served with the subpoena—is not in possession of the responsive documents and MediaTek-Taiwan, presumably in possession of this information, was not served and therefore will not comply with the subpoena without a covenant not to sue. *See Id.* Importantly, MediaTek indicated that if CommWorks were to provide a covenant not to sue, MediaTek-USA would produce the requested information. *See Id.* Subsequently, CommWorks asked MediaTek-USA to reconsider its position in view of the Protective Order in the underlying action that adequately addressed MediaTek-USA's concerns. With the prospect of motion practice pending, MediaTek-USA eventually produced 4 high-level datasheets for the Relevant Chips (one for each chip), which do not provide sufficient detail as to the implementation of relevant functionalities. *See* Decl. of Joel Williams ("Williams Decl."), ¶¶ 3-5. MediaTek-USA further maintained that the source code is not in MediaTek-USA's possession, custody, or control.

As a result, CommWorks is forced to seek judicial intervention to compel further discovery into the four Relevant Chips from MediaTek.

### III.    THE COURT SHOULD ENFORCE THE SUBPOENA TO MEDIATEK

#### A.    MediaTek Has Refused to Provide the Relevant Information in Its Sole Possession

First, the documents and source code requested are relevant to the case, specifically to the functionality of the Relevant Chips and ultimately to the infringement of the patents-in-suit by Defendant RCN. The functionality of the four Relevant Chips is critical to infringement analysis. *See* Williams Decl., ¶¶ 3-5. Various asserted claims pertain to certain technical features that are not described with any level of detail in Mediatek's high-level datasheets. *See id.* Other third party chipmakers, including Qualcomm, Broadcom, and On Semiconductor are in various stages of complying with similar CommWorks' Rule 45 subpoenas in the underlying action, including uploading source code on review computer and having arranged for source code review sessions. MediaTek thus stands alone as a third party chipmaker that has refused to produce any source-code whatsoever.

Second, MediaTek is in *sole* possession of the relevant documents and source code for its Relevant Chips. CommWorks exhausted its efforts to obtain discovery into the accused features. Defendant RCN's production does not contain any information into the Relevant Chips and RCN is not in the possession of this information. And even the Wi-Fi router manufacturers that provided some information to CommWorks, are not in possession of the technical information required to determine infringement. Chip manufacturer MediaTek is the only party in possession of this information and is refusing to provide it.

Third, enforcement of this Subpoena would not unduly burden MediaTek. The scope of the requests has been limited to the absolute minimum: information regarding only four of MediaTek's Relevant Chips required to establish infringement. CommWorks has made every effort to narrow its requests to MediaTek for discovery, but MediaTek maintains its refusal to

make source code available for inspection.  Although CommWorks has attempted to work collaboratively with MediaTek, reducing the scope of the requested information and engaging in the meet-and-confer process, it is now apparent that MediaTek will not comply with the Subpoena without judicial intervention.

### B.     MediaTek's Objection Is Without Merit

MediaTek's principal objection is that the party served with the subpoena, MediaTek-USA, is not in possession, custody, or control of the requested documents and only the parent entity, MediaTek-Taiwan is the party in possession of the requested information.  This objection fails for several reasons.

As an initial matter, by its own admission during the meet-and-confer process, MediaTek-USA *does* have control over the requested information.  MediaTek-USA was prepared to provide this information to CommWorks, but only if CommWorks promised not to sue MediaTek.  *See* Moore Decl., ¶ 23.  The conclusion is: either MediaTek-USA is already in possession of the requested information, or it has a way to obtain it from MediaTek-Taiwan, *i.e.*, MediaTek-USA has control over the requested information.

Moreover, even though formally MediaTek-Taiwan and MediaTek-USA may appear to be distinct entities, in practice, no such distinction exists.

First, all MediaTek-USA's directors (David Ku and Keven Jou) happen to be key managers of MediaTek-Taiwan.  One of MediaTek-USA's directors, David Ku, happens to be Executive Vice President and CFO & Spokesman of MediaTek-Taiwan.  The other director, Keven Jou, happens to be MediaTek-Taiwan's CTO.

| MediaTek USA Inc. | Director | David Ku |
|---|---|---|
| | Director | Kevin Jou |

MediaTek Inc. 2020 Annual Report at 101, List of Directors, Supervisors and Presidents of the

[MediaTek-Taiwan's] Affiliated Companies.  *See* Moore Decl., Ex. 6 at 101.

## 3.1.    Profiles of Key Managers

| Title/Name | Nationality | Gender | Date Effective |
|---|---|---|---|
| Chairman<br>Ming-Kai Tsai | R.O.C. | Male | May 21, 1997 |
| Vice Chairman<br>Ching-Jiang Hsieh | R.O.C. | Male | Sep. 15, 2005 |
| CEO<br>Lih-Shyng Tsai | R.O.C. | Male | Jun. 1, 2017 |
| President<br>Joe Chen | R.O.C. | Male | Jul. 1, 2012 |
| Executive Vice President & CFO & Spokesman<br>David Ku | R.O.C. | Male | Jan. 1, 2011 |
| Executive Vice President<br>Cheng-Te Chuang | R.O.C. | Male | Apr. 7, 2009 |
| Executive Vice President & CTO<br>Kevin Jou | R.O.C. | Male | May 30, 2011 |
| Senior Vice President | | | Jul. 1 |

MediaTek Inc. 2020 Annual Report at 19, Profiles of Key Managers [of MediaTek-Taiwan] (red

boxes added).  *See* Moore Decl., Ex. 6 at 19.

      Second, MediaTek has a significant number of chip designers at MediaTek-USA office

locations who consider themselves employees of MediaTek-Taiwan (MediaTek Inc.).  For

example:

> **Achuta Thippana**
>
> Design Manager, Distinguished Member of Technical Staff at MediaTek Inc.,
>
> Austin, Texas, United States · 500+ connections

LinkedIn Profile for Achuta Thippana. *See* Moore Decl., Ex. 7.

> **Sourabh Mathur**
>
> Sr. Member of Techinal Staff at MediaTek Inc.
>
> Austin, Texas, United States · 500+ connections
>
> ...
>
> About
>
> Design Verification Expert.

LinkedIn Profile for Sourabh Mathur. *See* Moore Decl., Ex. 8.

> **Anand Rajagopalan**
>
> Physical Design Manager
>
> Austin, Texas, United States · 500+ connections

LinkedIn Profile for Anand Rajagopalan. *See* Moore Decl., Ex. 9.

> **Li Ma**
>
> Senior Member of Technical Staff at MediaTek Inc.
>
> Sunnyvale, California, United States · 122 connections
>
> ...

> ## Experience
>
> ### Senior Member of Technical Staff
> MediaTek Inc.
>
> Aug 2014 - Present · 7 years 7 months
>
> San Jose, CA
>
> WLAN communication system design
> PHY algorithms design and system modeling

LinkedIn Profile for Li Ma. *See* Moore Decl., Ex. 10.

> Third, MediaTek-Taiwan is the assignee of numerous patents, some even relating to chip design, where all inventors are U.S. residents:

| | | |
|---|---|---|
| (54) | | **RECEIVER ARRANGEMENT AND METHOD OF PERFORMING OPERATIONS OF RECEIVER** |
| (71) | Applicant: | **MEDIATEK INC.**, Hsin-Chu (TW) |
| (72) | Inventors: | **Ravikanth Suravarapu**, Austin, TX (US); **Saravanan Rajapandian**, Austin, TX (US); **Narayanan Baskaran**, Austin, TX (US); **Caiyi Wang**, Austin, TX (US); **Jing Li**, Austin, TX (US) |
| (73) | Assignee: | **MEDIATEK INC.**, Science-Based Industrial Park, Hsin-Chu (TW) |

U.S. Pat. No. 9,300,264. *See* Moore Decl., Ex. 11.

| (54) | **RADAR INTERFERENCE MITIGATION METHOD AND APPARATUS** |
|------|--------------------------------------------------------|
| (71) | Applicant: **MediaTek Inc.**, Hsinchu (TW) |
| (72) | Inventors: **Chih-Ming Hung**, McKinney, TX (US); **Khurram Muhammad**, Winston-Salem, NC (US) |
| (73) | Assignee: **MediaTek Inc.** |

U.S. Pat. No. 11,002,829. *See* Moore Decl., Ex. 12.

| (54) | **SHARED FILTER DESIGN FOR PILOT SYMBOL AVERAGING IN RAKE FINGERS IN WCDMA SYSTEMS** |
|------|---------------------------------------------------------------------------------------|
| (75) | Inventors: **Timothy Fisher-Jeffes**, Cambridge, MA (US); **Dilip Muthukrishnan**, Cedar Park, TX (US) |
| (73) | Assignee: **Mediatek Inc.**, Science-Based Industrial Park, Hsin-Chu (TW) |

U.S. Pat. No. 8,027,375. *See* Moore Decl., Ex. 13.

| (54) | **DATA ACCESS TRACING WITH COMPRESSED ADDRESS OUTPUT** |
|------|---------------------------------------------------------|
| (75) | Inventors: **Li Lee**, Brookline, MA (US); **Ramesh Jandhyala**, Cedar Park, TX (US); **Srikanth Kannan**, Cedar Park, TX (US) |
| (73) | Assignee: **MediaTek Inc.**, Hsin-Chu (TW) |

U.S. Pat. No. 8,316,214. *See* Moore Decl., Ex. 14.

9

| | |
|---|---|
| (54) | **DIGITAL CAMERA WITH VOICE RECOGNITION ANNOTATION** |
| (75) | Inventor:    **Viktors Berstis**, Austin, TX (US) |
| (73) | Assignee:    **MediaTek Inc.**, Hsin Chu (TW) |

U.S. Pat. No. RE41,602. *See* Moore Decl., Ex. 15.

Fourth, and most telling, is that MediaTek posts job openings on MediaTek-Taiwan's website for "Chip Design" positions at MediaTek-USA locations, including in the Austin area:

| Job Title | Region | Job Category |
|---|---|---|
| Sr Design Verification Engineer | Austin, TX | Chip Design |
| RF/mmW IC Design Engineer | Austin, TX | Chip Design |
| Physical Design Engineer | Austin, TX | Chip Design |
| Senior Timing Analysis Engineer | Austin, TX | Chip Design |
| Senior RTL Design Engineer | Austin, TX | Chip Design |
| Senior SRAM/Memory Designer | Austin, TX | Chip Design |
| CPU Technology Engineer | Austin, TX | Chip Design |
| Design Methodology Engineer – Digital Design Flow | Austin, TX | Chip Design |
| Mixed Signal Behavior Modeling Engineer | Austin, TX | Chip Design |
| IC Package Technology Engineer | Austin, TX | Chip Design |

...

| Job Title | Region | Job Category |
|---|---|---|
| Sr. Staff/Staff Engineer, RF Design | San Jose, CA | Chip Design |
| ASIC silicon IP technology Support | San Jose, CA | Chip Design |
| Sr. Staff Memory Design Engineer | San Jose, CA | Chip Design |
| Design Verification Technical Manager | San Jose, CA | Chip Design |
| Senior Staff Verification Engineer | San Jose, CA | Chip Design |
| SRAM/In-Memory Computing Design Engineer | San Jose, CA | Chip Design |

...

| Job Title | Region | Job Category |
|---|---|---|
| Analog/Mixed Signal Circuit Designer | Irvine, CA | Chip Design |
| 2022 High Speed Transceiver and Serial Links Intern | Irvine, CA | Chip Design |
| Analog Mixed Signal Designer | Irvine, CA | Chip Design |
| Analog CAD Engineer | Irvine, CA | Chip Design |

MediaTek's Website, Careers (last accessed on February 9, 2022). *See* Moore Decl., Exs. 16-18. Chip designers working at MediaTek-USA locations need access to the internal documentation of the chips (not high-level datasheets that MediaTek-USA has produced to date) and the source code for the chips themselves and for the firmware running on those chips in the ordinary course of designing and testing chips. *See* Williams Decl., ¶ 6. In view of these engineering positions at MediaTek-USA, MediaTek's contention that MediaTek-USA does not have access to MediaTek-Taiwan's source code and documents is simply incredible. *See* Williams Decl., ¶ 7.

Moreover, an identical claim by MediaTek-USA that it lacked access to MediaTek-

11

Taiwan's documents has already been rejected. In 2014, the ITC compelled MediaTek-USA to produce technical documents it claimed belonged to its Taiwanese parent in light of MediaTek-USA's own declarations that it accessed such documents in the ordinary course of business.

Specifically, Hugh Mair, who at the time was a manger of High Performance Technology Division at MediaTek-USA testified that:

> 7.     MediaTek USA's principal business activities relate to research and development of portions of analog and digital semiconductors.
>
> . . .
>
> 9.     In doing their work, MediaTek USA engineers can access certain documents and information from MediaTek Inc. . . .
>
> 14.     MediaTek USA employees only work with portions of "Layout Files" (as defined in the subpoena, page 7 (Definition 19)).[2]

Mair Declaration, ¶¶ 7, 9, 14. *See* Moore Decl., Ex. 19 at 55-56. Underscoring the blurred lines between MediaTek-USA and MediaTek-Taiwan, Mr. Mair's LinkedIn profile lists that he was and is still employed by MediaTek-Taiwan.

| | |
|---|---|
| **Hugh Mair** | MediaTek |
| Assistant General Manager, High Performance Processor Technology | University of Glasgow |
| Austin, Texas, United States · 500+ connections | |

. . .

---

[2] Definition 19 in the Subpoena: "Layout File" means any document or file used for data exchange of Semiconductor Device layout information, including, but not limited to, GDS files, OASIS files, ELECTRIC VLSI Design file, and any other computer aided design ("CAD") file containing Semiconductor Device layout information."

## Experience

### MediaTek
9 years 6 months

### Assistant General Manager
Feb 2016 - Present · 6 years 1 month

Austin, Texas Area

Assistant General Manager for High Performance Processor Technology (HPT) Business Unit of MediaTek.

### Director
Aug 2014 - Feb 2016 · 1 year 7 months

Austin, Texas Area

Director for Advanced CPU and Technology 1, the Austin-based division of MediaTek's High Performance Processor Technology Business Unit.

### Principal Member Technical Staff -- LOW POWER ARCHITECTURES
Sep 2012 - Aug 2014 · 2 years

Dallas/Fort Worth Area

LinkedIn Profile for Hugh Mair. *See* Moore Decl., Ex. 20.

In ruling on the motion to quash the subpoena and specifically addressing MediaTek-USA's argument that "it is not in possession, custody, or control of responsive documents and information as to many of the discovery requests," the ALJ held as follows:

> It is determined that, under at least *Camden* factors three, four, and five, MediaTek USA has control over the subpoenaed information because MediaTek USA can access this information (a) to meet its own business needs, (b) when the need arises in the ordinary course of business, and (c) as a function of its marketing and servicing of MediaTek Inc.'s products in the United States. The evidence cited in Tela's opposition to MediaTek USA's motion to quash demonstrates that MediaTek USA's business includes engineering, research and development, and design of portions of semiconductor chips. See Tela Opp'n to MediaTek USA at 5 (citing Mair Decl. ¶¶ 7-8). When the need arises, "MediaTek USA engineers can access certain documents and information from MediaTek Inc." *See id* (citing Mair Decl. ¶ 9). In addition to chip designs, MediaTek USA also provides field engineering support to MediaTek Inc. products.  See id Ex. 1. Field engineering support

13

> requires access to numerous technical documents in the ordinary
> course of MediaTek USA's business. Id. Ex. 1. Inasmuch as
> MediaTek USA has a need for technical documents in the ordinary
> course of business in both field engineering and research,
> development, and chip design, it is determined that MediaTek
> USA has control over the technical documents requested by the
> subpoena.

ITC Inv. No. 337-TA-906, Order No. 11 at 8-11. *See* Moore Decl., Ex. 21 at 8-11. Applying the

ITC holding, based on MediaTek's own declaration, MediaTek-USA has control over

MediaTek-Taiwan's documents and information relating to router SoCs in the ordinary course of

its business. Even if MediaTek-USA is not the legal owner of this information, it still has

control, which is the determinative factor. *MGA Entertainment, Inc. v. Nat'l Prods., Ltd.*, Case

No. CV 10-07083 JAK (SSx), 2012 WL 182158, at *7 (C.D. Cal. Jan. 23, 2012) ("A party

having actual possession of documents must allow discovery even if the documents belong to

someone else; legal ownership of the documents is not determinative.").

In sum, MediaTek-USA has access to and control over documents and source code

supposedly located in Taiwan. *See* Williams Decl., ¶ 8. MediaTek-USA's attempt to avoid its

obligation to produce responsive documents and source code, on the account that MediaTek-

Taiwan (but not MediaTek-USA) has them, should be rejected.

## IV.    IN THE ALTERNATIVE, THE MOTION SHOULD BE TRANSFERRED TO THE ISSUING COURT

Rule 45(f) provides that when "the court where compliance is required did not issue the

subpoena, it may transfer a motion under this rule to the issuing court if . . . the court finds

exceptional circumstances." Fed. R. Civ. P. 45(f). The Advisory Committee notes provide:

> In some circumstances, however, transfer may be warranted in
> order to avoid disrupting the issuing court's management of the
> underlying litigation, as when that court has already ruled on issues
> presented by the motion <u>or the same issues are likely to arise in
> discovery in many districts</u>.

Fed. R. Civ. P. 45 Adv. Comm. Notes (2013) (emphasis added). In deciding whether to transfer enforcement of a subpoena to the issuing court, courts consider "the burden on the party responding to the subpoena in the event of a transfer," as well as "factors such as judicial economy, docket management, and the risk of inconsistent rulings." *Agincourt Gaming, LLC*, 2014 WL 4079555, at *6 (citing cases). These factors favor transfer.

First, the transfer would promote judicial efficiency. The Issuing Court, and more specifically the presiding judge in the underlying action, Judge Vyskocil, is uniquely situated to decide issues concerning the scope and meaning of the asserted claims and whether discovery regarding MediaTek's Relevant Chips is necessary for CommWorks to prove the underlying claims. *See In re Niaspan Antitrust Litigation*, 2015 U.S. Dist. LEXIS 67525, 2015 WL 3407543, at *1 (D. Md. May 26, 2015) ("While familiarity with the underlying action will not always justify a transfer, it is a compelling factor in 'highly complex' cases where the issuing court is aware of 'the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'") (quoting *Wultz*, 304 F.R.D. at 46); *Parker Compound Bows, Inc. v. Hunter's Mfg. Co. Inc.*, 2015 U.S. Dist. LEXIS 156557, 2015 WL 7308655, at *2 (N.D. Ohio, Nov. 19, 2015) ("[T]he issuing court's expertise is particularly valuable here because this motion is complex, and raises a number of interlocking issues from the underlying litigation.")

Second, transferring the motion to the Issuing Court would enable the Issuing Court to oversee outstanding disputes regarding the relevance and possession, custody, or control of information concerning the Relevant Chips in the accused instrumentalities. Here, Judge Vyskocil is uniquely situated to resolve the scheduling concerns raised by the compliance with the Subpoena and to consider the implications on expert discovery and presentation of evidence

occasioned by the order related to the enforcement of this Subpoena. *See Stanziale v. Pepper Hamilton LLP*, No. M8-85 (Part I) (CSH), 2007 U.S. Dist. LEXIS 11320 (S.D.N.Y. Feb. 8, 2007) (transferring a motion to compel a third party to produce documents to the issuing court partly "because the presiding judge in the [issuing] court is better positioned to evaluate the battling claims of privilege and cost allocation").

Third, transfer is also appropriate to avoid the risk of inconsistent rulings in different judicial districts. *See Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) (granting motion to transfer where "potential for inconsistent rulings should be avoided"). Although CommWorks is continuing to meet and confer with other third parties, including other chip manufacturers, similar motions to enforce subpoenas issued to them are possible. Transfer to the Issuing Court would avoid the risk of inconsistent rulings between the Issuing Court and other courts (including this Court) where such motions are brough. *See Dispatch Printing Co. v. Zuckerman*, No. 16-cv-80037-BLOOM/Valle, 2016 U.S. Dist. LEXIS 10184 (S.D. Fla. Jan. 27, 2016) ("as [plaintiff] continues its investigation, it will continue to subpoena this same type of information from various judicial districts … Thus, there is a demonstrable risk of inconsistent discovery rulings, which the Advisory Committee Notes [on Fed. R. Civ. P. 45] expressly recognize as an exceptional circumstance."); *In re Subpoena Issued to Bayer Cropscience in Civil Action No. 5:14-CV-117*, No. 5:16-MC-10-RJ, 2016 U.S. Dist. LEXIS 187523, at*9-10 (E.D.N.C. June 14, 2016) (transferring a motion to compel because "a transfer will prevent interference with the [issuing court]'s management of the underlying litigation and avoid the risk of various courts ruling differently on the same issues" when there were multiple subpoenas across multiple district).

Lastly, transferring enforcement of this subpoena to the Southern District of New York

would not unduly burden MediaTek.  Courts have held that transferring a "*motion* to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions, does not rise to the level of unfair prejudice." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 45 (D. D.C. 2014) (emphasis in original).  In addition, the Advisory Committee Notes to Rule 45 suggest that any travel-related burdens may be minimized by "encouraging transferee courts to allow appearances to be made telephonically in the event that a hearing is deemed necessary." *Agincourt Gaming, LLC*, 2014 WL 4079555, at *8; *see also*, *e.g.*, Fed. R. Civ. P. 45 Adv. Comm. Notes (2013) ("If the motion is transferred, judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties, if it is necessary for the attorneys admitted in the court where the motion is made to appear in the court in which the action is pending.").  And in the recent months, such remote appearances have become routine, even for local attorneys.

## V.    REQUESTED RELIEF

Accordingly, CommWorks requests that this Court order MediaTek to produce additional documents and source code responsive to the Subpoena, pertaining to MediaTek's Relevant Chips, namely MediaTek's MT7615EN, MT7615B, MT7620A, and RT5592 SoCs, within ten days of this Court's order.

Alternatively, CommWorks requests this Court transfer the consideration of this motion to the Issuing Court, the District Court for the Southern District of New York.

Dated: Austin, Texas
        February 15, 2022

Respectfully submitted,

By: _____

Dmitry Kheyfits
dkheyfits@kblit.com
Brandon G. Moore
bmoore@kblit.com
KHEYFITS BELENKY LLP
108 Wild Basin Road, Suite 250
Austin, TX 78746
Tel: 737-228-1838
Fax: 737-228-1843

Andrey Belenky
abelenky@kblit.com
Hanna G. Cohen
hgcohen@kblit.com
KHEYFITS BELENKY LLP
80 Broad Street, 5th Floor
New York, NY 10004
Tel: 212-203-5399
Fax: 212-203-5399

*Attorneys for Plaintiff CommWorks Solutions, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 15, 2022, to all counsel of record for MediaTek USA Inc. and Defendant RCN Telecom Services, LLC in the case who are deemed to have consented to electronic service via the Court's CM/ECF system.

Brandon G. Moore